**LEASAU K. ESEROMA, Plaintiff,**

**v.**

**PAOPAO F. FERESA (County Chief of Fitiuta County), LUTU
FUIMAONO (President of the Senate), and LEFITI FAAFETAI,
Defendants.**

High Court of American Samoa
Trial Division

CA No. 05-97

June 20, 1997

Before RICHMOND, Associate Justice, and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Marshall Ashley
For Defendant Paopao Faresa, Henry W. Kappel, Assistant
Attorney General
For Defendants Lutu Fuimaono and Lefiti Fa`afetai, Arthur
Ripley, Jr.

ORDER DENYING MOTION FOR RECONSIDERATION

On January 9, 1997, plaintiff Leasau L.K. Eseroma ("Leasau") brought an action for a declaration that he is the duly elected Senator from Ta`u County and an injunction enjoining defendants Paopao Faresa ("Paopao"), Lutu Fuimaono ("Fuimaono"), and Lefiti Fa`afetai ("Lefiti") from allowing Lefiti to serve as the Senator from Ta`u County.

On February 27, 1997, this court issued an opinion and order denying Leasau's requests for declaratory and injunctive relief. We held that an election in accordance with Article II, § 4 of the Revised Constitution of American Samoa ("Revised Constitution"), which requires Senators to "be elected in accordance with Samoan custom by the county councils of the counties they are to represent," is (a) an election involving the participation of all, and not some, of the county councils who are constitutionally granted the responsibility for electing a Senator to represent their counties; (b) an election at which there is an extensive sharing of ideas on potential candidates, and a forging of a collective will as to who shall serve in the Senate. Further, we found as a matter of fact that on December 14, 1996, Lefiti, and not Leasau, had been elected to represent Ta`u County, Fitiuta County, and Faleasao County in the Senate in accordance with the requirements of Article II, § 4 of the Revised Constitution.

Leasau now moves for reconsideration of this court's February 27 decision, claiming that the December 14 election was not conducted "in accordance with Samoan custom" as required under Article II, § 4. Leasau alleges that the December 14 meeting was fatally flawed in three respects: (1) because Ta`u County submitted two nominees to the Senate, rather than one; (2) because Lefiti was "ousted" by the Ta`u County Council, and yet participated in the December 14 meeting; (3) because To`oto`o La`apui disregarded the collective will of the assembly and impermissibly based his announcement on the relative rankings of Lefiti and Leasau.

## Discussion

### 1. The Nomination of Two Candidates.

Leasau argues that the evidence presented at trial indicated that on the island of Ta`u, the county councils of Ta`u County, Faleasao County, and Fitiuta County generally each nominate one candidate for the two Senate seats assigned to the island of Ta`u. Leasau contends that the submission of two names from Ta`u County deviated from this local "tradition" and therefore rendered the election unconstitutional.

Even assuming Leasau represents the facts correctly, we can not agree with his conclusion. Leasau's argument assumes that any local practice during an election meeting is a "Samoan custom," but the term "Samoan custom" in Article II, § 4 can not be construed so broadly. *Meredith v. Mola*, 4 A.S.R. 773, 781 (Trial Div. 1973). In *Meredith v. Mola*, the Trial Division indicated in dicta that the manner of a Senate election "is determined by Samoan custom of the various counties." 4 A.S.R. 773, 781 (Trial Div. 1973). However, this statement cannot be construed as suggesting that a body of electors must follow a Samoan custom of the county in order to satisfy the constitutional mandate that elections be "in

79

accordance with Samoan custom." (emphasis added). On the contrary, this statement indicates that the Senate election provision of the Revised Constitution permits variation among the counties in the manner in which they conduct their Senate election meetings.

This court has only constrained county council decisionmaking by demanding that all the relevant county council members, and not just some, have an opportunity to participate meaningfully in the election of the Senators who will represent their counties. *Mauga v. Lutu*, 10 A.S.R.2d 115, 120 (Trial Div. 1989); *Meredith*, 4 A.S.R. at 782. Therefore, we cannot interpret "Samoan custom," as it is used in Article II, § 4, to mean "Samoan custom of each county," so as to force Senate elections to be conducted in precisely the same manner for all eternity.[1]

■ Therefore, we affirm our initial opinion and order, which holds that the constitutional command that elections be "in accordance with Samoan custom" merely requires extensive sharing of ideas among county council members with regards to potential candidates, and a forging of a collective will as to who shall serve in the Senate.

## 2. The Participation of an "Ousted" County Council Member

In our February 27 decision, we held that it was not necessary to determine the exact composition of the Ta'u County Council because both of the factions claiming to be the "true" Ta'u County Council had an opportunity to participate in the election. Leasau now argues that the mere participation of "ousted" members tainted the election and rendered the election unconstitutional.

■ The reasoning we have just applied above is the appropriate response to Leasau's contention. Just as an election is not tainted by consideration of extra nominees, the participation of non-council members is not a fatal flaw

---

[1] A disturbing aspect of Leasau's argument is that it has no apparent limitations. Under Leasau's theory, it would seem that an election would be unconstitutional if the county councils usually served pork and taro at the election meeting feast, but instead served chicken and bananas. Even though the county council members would still extensively share ideas and shape the collective will, the mere presence of such foreign elements as chicken and bananas would render the election null and void. Thus, if we adopt Leasau's interpretation of "Samoan custom," the number of constitutional challenges to Senate elections would increase dramatically, and the court would be forced into lengthy fact-specific trials regarding the "Samoan custom" of each county and the degree to which the electoral body respected those county traditions.

under Article II, § 4 of the Revised Constitution. As long as all the county council members are offered the opportunity to engage in the extensive sharing of ideas, and the decision reported to the Senate President reflects the collective will of the electoral body, the constitutional requirements are satisfied. We see no harm in permitting "ostracized" members of a county council to share their thoughts on an election. If these individuals have been truly ousted for illegal or immoral conduct, the rest of the electoral body will surely devalue their contributions to the discussion. Otherwise, the individuals' speeches can only sharpen the debate on the candidates, and enhance the quality of the final collective decision.

### 3. To`oto`o La`apui's "Announcement" of the Decision

Leasau argues that when to`oto`o La`apui of Fitiuta County announced the decision of the assembly on December 14, he considered only the fact that Lefiti was a fa`atui, a matai with higher rank than Leasau. Leasau thus contends that the election of Lefiti did not represent the collective will of the county councils of Ta`u County, Faleasao County, and Fitiuta County, as is required under Article II, § 4 of the Revised Constitution. *Meredith*, 4 A.S.R. at 782.

Leasau misstates the record. High Talking Chief Fofo Sunia ("Fofo") testified at trial that the duties of the to`oto`o at county council meetings include the responsibility to "delineate the wish of the assembly." Reporter's Partial Transcript, at 18 (Chief Fofo's Testimony). Fofo emphasized repeatedly that the to`oto`o do not issue "dictatorial demands," *Id.*, "like the decisions made by Hitler," id. at 50. Rather, the to`oto`o "listen very carefully to the speeches being made," *Id.*, "tak[e] into account the wishes and the feelings of the general assembly," *Id.* at 18, and bring closure to the assembly by presenting their impression of the collective will. Fofo indicated that one of the ideas shared at the meeting was that Lefiti should go to the Senate because he was a fa`atui. Fofo acknowledged and that Lefiti's status "weighed heavily on [the to`oto`o], and it became of top priority in their minds." *Id.* at 55. However, the fact that Fofo and the other to`oto`o were particularly impressed with one argument is in no way inconsistent with Fofo's insistence that "[t]he decision was based upon the thoughts, the wishes expressed by the participants." *Id.* at 59.

Therefore, we find no clear error in our previous conclusion that the election of Lefiti expressed the collective will of the county councils of Ta`u County, Faleasao County, and Fitiuta County.

### Conclusion and Order

We find no clear error in our February 27 opinion and order finding the election of Lefiti as a Senator from the island of Ta`u to be consistent with

81

the commands of Article II, § 4 of the Revised Constitution. Accordingly, Leasau 's motion for reconsideration is denied.

It is so Ordered.